Our next case this morning is in re Marriage of Jennifer McGinnis. That's case number 4130980. For the appellant we have Donald Wilcox, Jr. And for the appellee, Stephanie Schultz. Mr. Wilcox. May it please the court, counsel. Let me first just briefly address the lesser of the two rulings of the trial court with which mother, who is the custodial parent in this case, quarrels in this case, and leave the bulk of my time for the more important issue, child support. So the first issue briefly, the trial court granted mother's request of January 2013 that father be directed to help with the expenses of child support. And the expense of extracurricular activities. But she made that ruling effective not with the date of the filing petition back in January of 2013, but rather she made it effective October 2013, some nine months later. We vigorously assert that ruling was unfair, particularly where she made her child support modification effective with the date of the petition of the filing of the child support modification petition. But I think our reasons were adequately stated in our brief, so I'll not attempt to elaborate here, but rather would accept any questions the court might have. Counsel, is it your position that the court was required to make that retroactive? No. No. The court had discretion. I just believe that it was an abuse of discretion. But in most cases, such a ruling should be made retroactive unless there's some specific reason why the effective date should be later, the date of the ruling, for example, than when the petition was filed. I think in most cases it should be when the petition was filed. But no, I don't disagree that the statute makes it discretionary with the court. As to the larger issue, child support modification, there are essentially four reasons why we think the trial court was in error in granting the father's petition to reduce child support, each of which we think individually justifies reversal in this case. First, the statute requires that father prove that there was a substantial deterioration in his financial circumstances as a prerequisite to reducing child support. Our view is that to the extent there was any change, and there wasn't much, but to the extent there was any change, it was an improvement in his financial condition, not deterioration. So let me ask you a question on that. Didn't the trial court utilize the figure provided by your client less the cost of the health insurance for the minors? Yes, in terms of the arithmetic. But we don't believe that was the appropriate approach, though. We think that the court should have stuck with what Judge Butler determined, and that is that basically father has so much control over his own income that the actual figures are not really susceptible to using a calculator and calculating support based on the percentage guidelines. But yes, we also oppose their arithmetic, and so we did our own arithmetic and suggested that to Judge Hill. Thank you. Second reason why we think that the trial court should be reversed is that father is to show that deterioration in his financial circumstances is involuntary. Father is a self-employed, over-the-road truck driver, and he failed to show, in our view, any reason other than voluntary choices on his part explaining why his income dropped dramatically in 2008, which was about two years before Judge Butler had rendered his opinion in the case setting permanent child support. A third reason we think that the trial court should be reversed is that we think the trial court gave insufficient consideration to one of the statutory factors that is particularly applicable to this case, specifically Section 505A2C directs that the trial court in setting child support give consideration to, quote, the standard of living the children would have enjoyed had the marriage not been dissolved. And fourth, as a reason why we think the trial court should be reversed, we believe the trial court incorrectly and somewhat incongruously found that father's current income can now be ascertained, as Your Honor suggested Judge Hill did in applying percentage guidelines to her new determination of child support. She found that his current income now can be ascertained, despite the fact that it could not be ascertained when Judge Butler had made his ruling. But wasn't that as a result of four consecutive years where the salary did not change very much? Yes, that's correct. How could that be in a ruinous finding? Because the father has control over his income, and the fact that he has that control I think is suggested by the disparity in his income for two, three years. So it goes back to the voluntary relinquishment of employment opportunities to reduce his income? Yes. They're tied together? Yes, that's correct. It seems to me, based upon my experience as a trial judge handling some cases of this sort, that these are difficult questions for judges to resolve when you're dealing with, it's not all that unusual, a claim that there is less income because the, in this case, the father's current income can be ascertained. In this case, the former husband has ordered to pay child support, isn't doing all he could and should have done. It's a voluntary diminution of his available income. It may not be a voluntary diminution. It may be due to extraneous factors. That's a tough call for a judge to make. It seems to me it's even a tougher call for us to second guess once the judge, in this case, has made it. How are we supposed to conclude that the trial court, having heard and seen all of this, was wrong in determining that his situation and his income was in good faith? In many cases, the credibility of witnesses is of great significance, including their appearance and demeanor while testifying. I don't think that's the case here. It's more a matter of looking at the statistics over the past many years. And I think also that the expert witness we presented, Mr. Moss, gave helpful information to the court. The court chose to discount it. Well, Judge didn't think so. We were favored with her extensive written order in this case, and she didn't seem to think your witness was particularly impressive. Well, I don't believe that was because she found him to be not credible personally. She found his information not helpful because he couldn't go far enough, isn't that right? That's correct. She found that it addressed the over-the-road trucking industry in general, but did not specifically address Mr. McGinnis' specifics. That is, whatever certificates he might have, what kinds of trucks he can drive, whether there's a specific job that is available for him personally. Let me be more explicit. If she were correct in her assessment that he was doing all he could and it was unfortunate that his income had diminished, there would be no problem with her order, would there? If, in fact, there were extraneous circumstances that, yes, caused his income to be less in 2009, 10, 11 than it was in 2006 and 2007, that's correct. So you're asking this court to conclude that her conclusion that he was acting in good faith and despite all that his income diminished was wrong? Yes, I'm asking the appellate court to look at what evidence was presented to Judge Hill and find that Father did not meet his burden of proving that there was a substantial change in circumstances and that that change was involuntary. Well, I'm just not sure I understand how on this record we can second-guess her evidentiary determination. This is kind of a question of fact, isn't it? Well, our assertion is that there was no evidence presented as to why Father would have been… Well, he testified. He testified? We have his testimony. This is what I'm doing and why. And you're saying, hey, Judge, don't believe that. But she did, apparently, didn't she? I believe he essentially testified his income went down after 2007. He didn't provide any explanation as to why or how or what's going on? Correct. He did not. Well, didn't he talk about a change in the setup that he had as far as his relationship with someone else having access to his truck and him working jobs related to that person versus just getting the jobs on his own? Well, first of all, I don't believe that that was the cause of the decrease in income. Well, I'm just asking, did he testify about that? He did testify about that. Okay. And he also testified that he didn't intentionally reduce his income, correct? That's correct. Yep. But, again, my response to that is twofold. Number one is I don't believe there was any relationship between his going from Cox to Hoffman. His income went down when he was still at Cox. It hasn't changed since he's gone to Hoffman. And secondly, he was still at Cox and the income had gone down some two years prior to Judge Butler making his ruling. So the decrease in income had already been taken into consideration by Judge Butler when Judge Butler made his determination as to what the appropriate child support should be. Now, when Judge Butler made his determination, you didn't have the great time span that you have now to look at several years of taxes and see is this something that's going to be an ongoing issue, the reduction. Is that a fair statement? Well, yes, but certainly within limits. And this was the fourth element of why we think that the court was in error. And Judge Butler also found that the father was not intentionally reducing his income. Is that accurate as well? He said there was little evidence of that, but he also indicated, and I don't know whether one would best characterize it as a euphemism or perhaps a form of British understatement, but Judge Butler in his ruling stated while there is little evidence that the respondent has intentionally reduced his income, he has little incentive or inclination to take marginal loads or work additional hours. I think what Judge Butler was indicating was he's got a substantial amount of control over what work he does. And so given that we were only looking at a couple of years, the judge didn't even try to calculate the income, Judge Butler, but basically said this is what's reasonable under these circumstances. Yes. And again, when we speak of the limited years of income he had, that's certainly correct. I presented on our side the tax returns for 2006 and 2007, figuring that while there's certainly for any self-employed person is going to be some variation in income, 24 months' worth for an over-the-road truck driver should be a pretty substantial sample size to utilize. He had been driving, though, for some substantial time prior to that. He indicated in his testimony to Judge Hill that at that point he had been driving for at least 15 years plus. So when he was before Judge Butler, he had been driving for at least 11 plus years. So there was substantial income available to both sides. Again, we utilized two years' worth prior to the separation, figuring that, again, two years is a pretty substantial sample size, and it's the time period before the separation. So our view was that was likely the most accurate set of income to be presented to the court. Attorney Hoekstra, a father's previous attorney, chose to present income, excuse me, evidence as to the income, his tax returns for 2008, and income that he had received up until August of 2009, substantially less than 2006 and 2007. He chose to not present evidence as to what Mr. McGinnis' income was in 1995, 1996 through 2006, which is the first year that we presented evidence of his income. So again, he has a substantial history driving a truck even prior to being before Judge Butler. So it's not that information was only available for four years at that point and now for seven years before Judge Hill. We've got many years prior to that that was available to either side if they had wished to present it to the court. So I don't believe, though again Judge Hill seems to suggest otherwise, that while Judge Butler didn't have enough information to make a determination as to the arithmetic, as to what his actual current income is, now Judge Hill does. My perspective is if Judge Butler didn't have enough information because, I would suggest, father has so much control over his own income, then neither did Judge Hill have enough information as to his income earning ability to ascertain what his current income is or should be. That's the fourth reason why we believe that the trial court's decision should be reversed. As to the issue of voluntariness, again father asserted in his petition for modification that the company that he was leasing with in April of 2010 stopped leasing to owner-operators effective December 31 of 2010. That was in his petition. But there was no evidence presented of that. The evidence that was presented was father's testimony that he had understood that Cox was going to stop using owner-operators and so he chose to then go with Hoffman at that point. But mother testified, and it was not disputed, she called Cox to ask, are you still using, at the time we were in litigation with Judge Hill, are you still using owner-operators? And they said, yes we are. And in fact, father also testified that many of the loans he now has are actually from Cox, but now they additionally have to go through Hoffman instead of just going directly from Cox to him. The third claim of error is that we believe the trial court gave insufficient consideration to the statutory element of preserving the standard of living the children would have enjoyed had the marriage not been dissolved. As I had detailed in the brief, we believe that father has essentially been able to preserve for himself the standard of living that he had prior to the party's separation in January 2008. He's got not only his income, but he's remarried to a lady who is earning about identical income to what he is also earning. They're able to enjoy, the testimony indicated, some truly optional items, such as Carly Davidson motorcycles, spending several hundred dollars a year on chewing tobacco. Mother has tried as best she can to preserve the standard of living the children enjoyed before the separation in January 2008 also. She refinanced the old farmhouse that the parties had selected together during their marriage out in the country about a mile north of Stanford. She was able to obtain a new loan to refinance the house with her mother as co-signer, wherein she pays about $680 a month on principal and interest, substantially more than father and his new wife were paying together to rent their home. About $450 is what they're paying to one of his new wife's relatives to rent their single-family, two-story home in Clinton. She wanted to keep the kids in the house because it's the only house those children know now entering seventh and fourth grade. It's in the rural school district, Olympia, that the children have been attending. The children are comfortable with the geographic surroundings of that old farmhouse, but her financial affidavit shows that she can barely afford those expenses and wouldn't have gotten the loan she now has on these terms without her mother co-signing, and she doubts she can keep the loan based on Judge Hill's reduction in child support. Mother has a junior college education. She lives in the country, as I indicated, about 15 miles west of Bloomington and about 25 miles east of Pekin, the larger communities nearer to Stanford. And with these two children and a third child she now has that's just shy of two years old, her income earning ability is sharply limited. She and the children live frugally. They don't take vacations. They don't enjoy the extras that father and his new wife are able to enjoy. But the big concern is being able to afford the house, the concern they'd have to move, uprooting the children from the home they've known, the school, the friends they've developed in the six years since the party separated. Father is able to maintain his standard of living. He's able also, I would assert, to help in the manner decided by Judge Butler. Judge Hill made no mention of the standard of living the family had prior to the divorce. I think that was given little or no consideration perhaps in her decision. In many cases a custodial parent, mother in this case, either from her own resources or with financial assistance from a new spouse, combining incomes, sharing expenses, they have sufficient financial resources such that whether child support is one figure, Judge Butler's figure perhaps, or another, Judge Hill's figure, doesn't significantly affect the children's lifestyle. But I would submit to the court that the facts of this case are such that a decrease, the decrease that was ordered by Judge Hill may make a substantial difference in the standard of living for these children and that, in fact, the father does have the wherewithal to assist so that they can continue to live in that home. Thank you. Thank you. Mr. Wilcox, you'll have rebuttal. Ms. Schultz? Thank you. May it please the court, counsel? First and foremost, this is a case that, of course, is with regard to a question of whether or not there, as the court has duly noted, been an abuse of discretion by the trial court. And there are two main questions, and I don't want to beat the proverbial dead horse, but whether or not there's been an abuse of discretion, as counsel so set out, first and foremost, with regard to the retroactive support on the extracurricular activities and whether or not the child support should have been modified pursuant to Section 510 of the Illinois Marriage and Dissolution of Marriage Act. With regard to the retroactivity, and I do want to speak to the retroactivity of the extracurricular activities and the decision that Judge Hill made, and whether or not we believe there's been an abuse of discretion. Of course, we don't believe that Judge Hill made an abuse of discretion. The reason being, and we did brief this, and it was at the end of our brief, we don't believe there was an abuse of discretion. I set forth, or we set forth in our brief, a very detailed timeline. My client filed in January of 2013 an emergency petition to suspend child support due to the fact that at that time, he was not only experiencing an economic slowdown, but that he was not even earning any income at that time. Two days subsequent to that filing, the petition for contribution to extracurricular activities was filed in. My client is not at all objecting to contributing to his children's extracurricular activities. He hasn't filed that objection. He hasn't said that it is an abuse of the Court's discretion to order him to pay for those extracurricular activities. He has been paying for those, and the Court will note that there's not a cross appeal on that issue. The only issue being raised on appeal is the one by the appellant with regard to the question of retroactivity. He has no issue with the Court ordering him from October of 2013 forward to pay one-half of extracurricular activities. Let me ask you about the point that Mr. Wilcox made concerning Cox Transfer and Hoffman Trucking. You heard his statement about how there was an allegation in the petition, but there was no evidence presented on this point. What about that? I apologize, Your Honor. Well, Mr. Wilcox argued that your client in his petition claimed that his employment with Cox Transfer was going to be problematic, and he had to look to the Hoffman Trucking Company. But then, as he just argued to us, there's no testimony presented on this point, and apparently Jennifer McGinnis testified that she had checked and was told, I guess, hearsay, but he suggested there was no objection to it, but no problem and we're in the business, or whatever that was all about. What's your explanation? I apologize, I didn't mean to talk over you, Your Honor. Actually, I believe there was an objection. I believe the objection was sustained. However, my client did testify to that fact, that Cox Transfer was no longer going to be doing direct brokerages with individual private truck drivers like my client. Therefore, my client was going to be brokeraging out through T.K. Hoffman, which is where he brokerages now. What he did was, when he moved to T.K. Hoffman, he essentially took his client with him, which is Cox Transfer. So my client found a client for T.K. Hoffman, and essentially is one of the chief, or one of the main clients, or one of the main drivers, for Cox Transfer when Cox Transfer has loads to hand out for T.K. Hoffman. So he actually testified to the fact, and it should be in the record, and I believe it is, because my client testified to it extensively and was cross-examined on this issue extensively at the trial court. You objected to the wife's testimony at this point? You believe it was sustained? I believe so, Your Honor. So that is not properly before us? No, Your Honor. Okay, go ahead. With regard to the issue, again, and this is very short, Your Honors, with regard to the issue of the retroactivity, my client filed his petition in with an affidavit indicating and clearly demonstrating that he was actually being loaned his child support between December of 2012 and, I believe, February of 2012, and he had to actually pay T.K. Hoffman back his child support between those dates. And that's why the lack of retroactivity is proper. And as was properly stated actually by counsel when he was giving his statement to the court just a few minutes ago, this is a discretionary issue. Judge Hill was the finder of fact in this case, and she found that retroactivity wasn't proper. And it's a very short window of retroactivity on the children's activities. And when we talk about their standard of living, part of their standard of living is they are in a lot of activities. And my client wants to see his children just as much as their mother be able to be in their activities. But at that period of time, he didn't have the money coming in, but he did make sure they received their support so that they could continue to achieve a standard of living at that time, even though he was asking his support to be lowered. With regard to the issue of the modification of child support, again, we do not believe that Judge Hill abused her discretion. As the court was asking questions to my esteemed colleague with regard to the four reasons that counsel gave of proof of deterioration, actually, I think the first question that's asked in the statute under Section 510 is whether or not there's been a substantial change in circumstance. Pursuant to the two cases that were presented in our brief, I believe that my client more than demonstrated at the trial court level that, in fact, there has been a substantial change in circumstances. Judge Hill very clearly laid out in her memorandum of opinion that she not only looked at the facts that were set before her in a very lengthy trial. That was delayed, and she was frustrated, and that was clear in her memorandum. She was frustrated with not only myself, with the parties, she was frustrated with counsel, but this was also a case of the parties with counsel. She was frustrated with everybody in this case, and she made that clear. And I'm very apologetic for it. My client's apologetic for it. There were multiple delays. This was also a visitation case. There was a lot of animosity in this case due to a lot of various factors, which caused the delays in this case. And we did what we could to get this resolved. And in the end, we got the, most importantly, the visitation resolved. But that caused delays that unfortunately held up the child support side of this case also. However, getting on to the child support side of this, with the substantial change in circumstances, Judge Hill took the time to go back to the record on the 2008 to the 2010 and the 2012 trials. And look at Judge Butler's order. Judge Butler did not have the ability or even the luxuries that Judge Hill had, which Judge Hill had an expert. She had my client's accountant, who was the accountant for Mr. and Mrs. McGinnis when they were married, and who has remained my client's accountant since then. And that's Mr. Armstrong. And even though Judge Hill indicated that Mr. Armstrong had actually overstated some of the expenses, she took the time to actually look at the numbers and find, go through all of it, and she crunched the numbers and she was able to come to a just number. And my client accepted her number. And he's not arguing with it. He thinks that what she came up with is a fair number. He's not questioning that. And that's why he doesn't believe it's an abuse of discretion. In addition, when we look at the Hart case, the Hart case indicates you don't look at 2006. That was a long time ago. You don't look at 1995. We filed this case in 2012. We finished in 2013. Judge Hill looked at 2012 and 2013, but she took the time to check on 2010 as a gut check. We do not believe this is an abuse of discretion. We believe this is a simple Section 510 modification of child support. And we had a very frustrated, yet very informed trial court judge who had to make a difficult decision with a self-examination. He was a self-employed individual who did not underemploy himself. And we had two trial court judges who said that my client did not underemploy himself, who said that my client did not do anything to avoid working. And his own accountant has been encouraging him, which is in the record, to change jobs because he's not making enough money. But he's doing everything he can to pay his support, and he's voluntarily paying one-half of his children's extracurricular activities, too, as counsel indicated, to make sure they maintain their standard of living because he wants his children to have what they can have. It seems rather odd that in 2007 his salary was $127,000 and then dropped the next year to $57,500. And the entire explanation offered for that is that there just wasn't the work. I mean, that's it? Yes, Your Honor, and unfortunately that would be because, and I believe that was on the part of the fact that Mr. Armstrong wasn't brought in to testify. I think if Mr. Armstrong would have been brought in to testify, he could have, and that would have been in the first trial, he could have explained better how the trucking industry worked or how my client's taxes worked or where his taxes were. And that's this grand fluctuation in how the work is handed out and not, because my client was with Cox Transfer, and it's a brokerage. So brokerages are handed out. And so if the individuals from Cox Transfer call my client with the loads and tell him, here are the loads we need you to run, you run these loads, because $112,000 in, I believe you said 2006, Your Honor, or 2007. I thought I said $127,000. $127,000 in 2007. Okay, I've got a six and a seven. So those numbers, if he received that many loads in that year, but in the next year he wasn't brokeraged out, that's why. And that's the gross fluctuations. And that's what Judge Butler was faced with. And that's why I said Judge Butler didn't have the luxury that Judge Hill had in 2012 and 2013. And that's the frustration. But as Judge Butler said, he did not believe, and neither did Judge Hill, that my client's intentionally underemploying himself. But again, as was testified to in both trials, my client's an over-the-road trucker, and there's a certain standard of living and quality of life, and he only gets to see these children every other weekend. So when is he supposed to visit with his children? There's a balancing act going on here that I think both judges were trying to look out for, for these children and for Mr. McGinnis with his children. Thank you. Thank you. Mr. Wilcox, do you have rebuttal? I do. Again, may it please the court and counsel, let me address two topics that came up in Ms. Skoll's argument. First of all, she seems to place significant emphasis on the fact that she had an expert witness before Judge Hill and that Judge Butler was apparently disadvantaged by that. I would submit that the testimony of the CPA, Lyndall Armstrong, who we acknowledge is an expert in what he does, was of very little significance in the determination of this case. Contrary to what Ms. Skoll suggests, he did not offer expert testimonies to the trucking industry. There was no information about that. What he did was he explained what Mr. McGinnis' tax returns consist of, what line 12 means, what line 35 means, what this deduction was, which truck, whether it's his pickup truck or his tractor for his over-the-road driving, was the loan that was included in the interest deduction at a particular line in the tax return. That was some information, but it had nothing to do with the trucking industry and why Mr. McGinnis would be earning, as the court suggests, substantially less in 2008, immediately after the separation in January of 2008, than what he had earned in the two years prior to that. What it was about the trucking industry that caused his income to drop so precipitously. Judge Hill did place emphasis on the expert's testimony. Some evidence of that appears at page 27 of the transcript. It's volume 3 of the Record on Appeal. Ms. Skoll has asked her expert witness, the accountant, based on your expertise within a reasonable degree of knowledge, do you believe that Mr. McGinnis had a substantial change in his economic circumstances? Mr. Wilcox, objection, Your Honor. That's for the court to decide. Judge Hill, he's an accountant. I think he can probably subtract 727.84 from 57 and make a determination, so overruled. Mr. Wilcox, let me indicate also, I quarrel with the assertion, that those are the two points in time interrupted by Judge Hill. You're going to have an opportunity to cross on that, Mr. Wilcox. When you do, I'll take that into consideration. Right now, I'm going to allow it. Mr. Armstrong, the accountant, please state the question again. Ms. Skoll, based on a reasonable degree of professional certainty and your capacity as an expert, do you believe that Mr. McGinnis has had a substantial change in his economic circumstances between 2008 and 2013? Mr. Armstrong, yes. Then I was allowed to cross-examine, and after some colloquy with the witness, I asked, so your answer to Ms. Skoll's question was simply comparing his father's 2008 tax return figures with his 2012 tax return figures? Mr. Armstrong's answer, yes. So Judge Hill wanted to hear, over objection, an expert opinion as to whether father's income in tax year 2012 was, quote, a substantial change, end quote, from his income in 2008. Now, that isolated question, yep, his income was less in 2012 than it was in 2008, but I submit there were two errors in relying on that testimony. First, those aren't the relevant time periods. I would submit that no earlier than August of 2009, the last evidence presented of income to Judge Butler before the motion to reconsider, and more likely December of 2009 was the starting point, and December of 2012 was then the end point, the comparison point. Secondly, I would submit that it's not a subject of expert testimony whether two figures are substantially different from each other. That was for the trier of fact to determine. And I would submit that everybody in the courtroom was as well positioned as the CPA was to state an opinion as to whether that was. Mr. Wilcox, I asked Ms. Scholes about your argument pertaining to the testimony of the wife. She said it was objected to and sustained. Is she right? I thought I might be able to put my finger on it in my notebook, but I'm not going to be able to. My recollection is otherwise. My recollection is there was no objection and the testimony was admitted. Go ahead. It certainly would be in the transcript. I just can't put my finger on it as we're here this morning. As to the issue of Judge Butler having limited financial information, both sides could have presented income from many years past. Again, it's not like we've got a real small sample size of just the four years that were presented to Judge Butler. Available to both sides were income information from years prior to that. Both sides decided that that was not of significance in furthering Judge Butler's determination of what was Mr. McGinnis' income at the time. So I would submit that Judge Hill is not in a significantly better position to ascertain income sufficiently accurate to apply calculations to it than Judge Butler was when he decided it's just too hard to pin down. I'm going to use my best judgment as to whether I think it's fair given the information I have. Thank you. Thank you. Thanks to both of you. The case is submitted and the court stands in recess.